UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY YARGEAU, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, FEDERAL HOUSING FINANCE AGENCY, and WELLS FARGO BANK N.A.,<br><br>Defendants. | No. 4:21-cv-40033-TSH |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS**

August 10, 2022

Hennessy, M.J.

Plaintiff Kimberly Yargeau ("Yargeau") filed a putative class action against the Federal Housing Finance Agency ("FHFA"), Federal National Mortgage Association ("Fannie Mae"), and Wells Fargo Bank, N.A. ("Wells Fargo," and collectively "Defendants"), alleging that Defendants nonjudicially foreclosed on properties, including her own, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. [Dkt. No. 22 ¶ 1]. Defendants filed two separate motions to dismiss, one by FHFA and Fannie Mae, the other by Wells Fargo. [Dkt. Nos. 40 and 43].[1] Judge Hillman referred both motions to me on April 20, 2022, for a Report and Recommendation. [Dkt. Nos. 42 and 44].

---

[1] Defendants initially filed their motions on January 14, 2022, which I denied on April 19, 2022 for failure to comply with L.R. 7.1(a). [Dkt. Nos. 26 and 28; 39]. Defendants renewed their motions on April 20, 2022, relying on their previously filed memorandums of law. [Dkt. Nos. 40 and 27; 43 and 29].

For the reasons stated below, I RECOMMEND that Defendants' motions to dismiss be GRANTED WITH PREJUDICE.

I. **BACKGROUND**

Fannie Mae and the Federal Home Loan Mortgage Corporation, known as Freddie Mac, are "private, publicly traded corporations . . . created by federal charter to support the development of the secondary mortgage market." Montilla v. Fed. Nat'l Morg. Ass'n, 999 F.3d 751, 754 (1st Cir. 2021) (edits in original) (citations omitted) (cert. denied, 142 S. Ct. 1360 (2022)). Fannie Mae's "primary business is purchasing mortgages, pooling them into mortgage-backed securities, and selling them to investors." Collins v. Yellen, 141 S. Ct. 1761, 1771 (2021). When Fannie Mae purchases a mortgage, it engages a "mortgage servicer," such as Wells Fargo, that "collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults." [Dkt. No. 22 ¶ 38].

In July 2008, in the wake of the housing market crash, Congress passed the Housing and Economic Recovery Act ("HERA"). [Dkt. No. 22 ¶ 19]; Montilla, 999 F.3d at 754. As part of HERA, Congress established FHFA "to supervise and regulate" Fannie Mae, and "empowered" FHFA's director to "place Fannie Mae into conservatorship" to "operate and control all of Fannie Mae's operations as its conservator."[2] [Dkt. No. 22 ¶¶ 19–20]. In September 2008, the Director of FHFA exercised this authority to place Fannie Mae under conservatorship. [Id. ¶ 21]. There is no specific end date to FHFA's conservatorship. [Id. ¶¶ 28–30]. As conservator, FHFA engages in "continuous supervision" of Fannie Mae and oversees mortgage servicers. [Id. ¶ 40]. In April 2011, FHFA created the "Servicer Alignment Initiative," which instructed mortgage servicers "to

---

[2] Under HERA, FHFA is authorized to also regulate Freddie Mac, which is not a party to this lawsuit. [See Dkt. No. 22 ¶ 19]; Montilla v. Fed. Nat'l Morg. Ass'n, 999 F.3d 751, 754 (1st Cir. 2021).

use non-judicial foreclosure procedures when foreclosing on residential properties in Massachusetts, including the Properties of the Representative Plaintiffs and others so similarly situated." [Id. ¶¶ 41–43].

Yargeau became the owner of a property in Sutton, Massachusetts on November 16, 2004. [Id. ¶ 48]. Years later, on May 25, 2007, Yargeau granted a mortgage against that property, which was then conveyed to Fannie Mae, who subsequently assigned it to Wells Fargo as mortgage servicer on October 14, 2019. [Id. ¶¶ 49–53]. Yargeau defaulted on the loan, so Wells Fargo foreclosed nonjudicially on the property in September 2018, assigning its bid to Fannie Mae. [Id. ¶¶ 54–55]. Yargeau now seeks redress, alleging that FHFA and Fannie Mae as government actors, and Wells Fargo as their agent, "jointly violated her Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale[.]" [Id. ¶¶ 56–58; 80–100].

## II.  MOTIONS TO DISMISS

On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth" factual allegations demonstrating "recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quotation omitted). That is, the complaint should be dismissed "if the allegations, taken as true, show the plaintiff is not entitled to relief." Jones v. Bock, 549 U.S. 199, 215 (2007).

### A.  FHFA and Fannie Mae

FHFA's and Fannie Mae's motion to dismiss should be granted because there is controlling First Circuit precedent involving virtually identical claims to Yargeau's. See Montilla v. Fed.

Nat'l Morg. Ass'n.[3] The plaintiffs in Montilla asserted, as Yargeau does here, "that Fannie Mae and FHFA are government actors and that the nonjudicial foreclosure sales violated their Fifth Amendment procedural due process rights." 999 F.3d at 754. In rejecting this assertion in Montilla, the First Circuit noted that although "it is undisputed that FHFA is a federal agency that sometimes acts as the government," this is not "dispositive." Id. at 756. Indeed, "[t]hat a federal agency exercising a portion of its statutory powers in one role is a government actor does not as a matter of law mean that it is a government actor for all purposes or in all exercises of its statutory powers." Id. The First Circuit clarified that the relevant consideration is whether FHFA "acted as the government in its role" as Fannie Mae's conservator during nonjudicial foreclosures, and concluded, based on the statutory language of HERA and precedent, that when "stepping into" the shoes of a private corporation (here, Fannie Mae), "and exercising" that entity's "private contractual rights to nonjudicially foreclose," FHFA does "not act as the government." Id. at 756–57 (citing O'Melveny & Myers v. FDIC, 512 U.S. 79, 86 (1994)). Because FHFA, as Fannie Mae's conservator, is not a government entity when foreclosing nonjudicially, "constitutional claims against it fail[.]" Id. at 759; see also Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 79 (1st Cir. 2005) ("It is well-settled that the due process provision of the Fifth Amendment serves as a limitation only on governmental, not private, action.").

The First Circuit then determined in Montilla whether Fannie Mae is a government actor during nonjudicial foreclosure by applying Lebron v. National Railroad Passenger Corporation, where "the Supreme Court articulated a three-part test to determine when a private corporation is a government actor for purposes of certain constitutional claims against it." Montilla, 999 F.3d at 759 (citing and quoting 513 U.S. 374 (1995)). In Lebron, the Supreme Court held that "if '[1] the

---

[3] Counsel for Yargeau also served as counsel for the plaintiffs in Montilla.

4

Government creates a corporation by special law, [2] for the furtherance of governmental objectives, and [3] retains for itself permanent authority to appoint a majority of the directors of that corporation,' then the corporation's actions 'are subject to the constraints of the Constitution.'" Id. (edits in original) (quoting Lebron, 513 U.S. at 376, 399).  The First Circuit found, and plaintiffs in Montilla did not dispute, that Fannie Mae "satisfied" the first two Lebron factors.  Id.  There was also no question that "pre-conservatorship," Fannie Mae was a private actor "not subject" to the Fifth Amendment.  Id. (citation omitted).  "The issue," therefore, was "whether, through FHFA's conservatorship over [Fannie Mae], the government has 'retain[ed] for itself permanent authority' over Fannie Mae[.]" Id. (quoting Lebron, 513 U.S. at 399).  The First Circuit held that FHFA's conservatorship over Fannie Mae is temporary, and "does not constitute permanent authority." Id.  HERA clarifies that "FHFA controls [Fannie Mae] for the limited purpose of 'reorganizing, rehabilitating, or winding up [its] affairs.'"  Id. (quoting 12 U.S.C. § 4617(a)(2)).  This "statutory language confirms" that FHFA's conservatorship "has 'an inherently temporary purpose,'" and "the fact that the FHFA has maintained the conservatorship for almost thirteen years does not mean that the government's control is permanent."  Id. at 759–60 (quoting Herron v. Fed. Nat'l Morg. Ass'n, 861 F.3d 160, 169 (D.C. Cir. 2017)).  Montilla is clear—Fannie Mae, and FHFA as Fannie Mae's conservator, are not government entities when foreclosing nonjudicially, and are therefore not subject to the requirements of the Fifth Amendment.  This controlling First Circuit precedent bars Yargeau's claims and warrants dismissal.

Yargeau attempts to circumvent Montilla, claiming that the Supreme Court's decision in Collins v. Yellen "rejects the logic and reasoning" of Montilla.  [Dkt. No. 46 at 1].  This claim does not survive analysis.  To begin, Collins is distinguishable as a general matter—it in no way involved FHFA nonjudicially foreclosing on defaulted properties as Fannie Mae's conservator.

5

Rather, Collins concerned a challenge by a "group of Fannie Mae's" shareholders to an amended stock purchase agreement between FHFA, as conservator for Fannie Mae and Freddie Mac, and the Department of Treasury. 141 S. Ct. at 1770. "Shortly after the FHFA came into existence" and placed Fannie Mae into conservatorship, it negotiated an agreement on behalf of Fannie Mae with the Department of Treasury. Id. A few years later, FHFA and Treasury amended that agreement, which amendment caused Fannie Mae "to transfer enormous amounts of wealth to Treasury," resulting in a "slew of lawsuits[.]" Id. The shareholders in Collins challenged the amended agreement "on statutory and constitutional grounds." Id. Statutorily, "the shareholders contended" that FHFA "exceeded its authority as conservator" under HERA when it agreed to the amended agreement. Id. Constitutionally, "the shareholders argued that the FHFA's structure violates the separation of powers" because FHFA is "led by a single Director" who, under HERA, "may be removed by the President only 'for cause.'" Id. (citing 12 U.S.C. § 4512(b)(2)).

The Supreme Court rejected the shareholders' statutory claim. Under HERA, judicial review is "sharply circumscribed," such that "unless review is specifically authorized by one of [HERA's] provisions or is requested by [FHFA's] Director, 'no court may take any action to restrain or affect the exercise of powers or functions'" of FHFA as conservator or receiver. Id. at 1775–76 (quoting § 4617(f)). This "anti-injunction clause applies only where the FHFA" exercises powers as conservator or receiver, but does not apply when FHFA exceeds those powers. Id. at 1776. The statutory question before the Court, therefore, was "whether the FHFA was exercising its powers or functions as conservator when it agreed" to the amended stock purchase. Id. The Court began by noting that under HERA, "when the FHFA acts as a conservator, its mission is rehabilitation, and to that extent, an FHFA conservatorship is like any other." Id. (quoting § 4617(b)(2)(D)). However, FHFA conservatorship under HERA "differs from a typical

6

conservatorship in a key respect"—FHFA can "act in what it determines is 'in the best interests of the regulated entity *or the Agency*." Id. (emphasis in original) (quoting § 4617(b)(2)(J)(ii)). So "when the FHFA acts as a conservator" it may "aim to rehabilitate" Fannie Mae using methods that are "not in the best interests of" Fannie Mae, but rather are "beneficial" to FHFA and, "by extension, the public it serves." Id. Because FHFA as conservator "reasonably concluded" that the amended agreement would serve "the best interests of members of the public who rely on a stable secondary mortgage market," its decision to execute the amended agreement was sound under HERA, and the shareholders' statutory claim failed. Id. at 1777.

The Court then turned to the shareholders' constitutional claim—that HERA's "statutory restriction on the President's power to remove the FHFA Director is unconstitutional" because it "violates the separation of powers." Id. at 1778, 1783. Citing its own precedent in Seila Law LLC v. Consumer Financial Protection Bureau as "all but dispositive," the Court held that because FHFA "is an agency led by a single Director," HERA's restriction on "the President's removal power" improperly "'clashes with the constitutional structure by concentrating power in a unilateral actor insulated from Presidential control.'" Id. at 1783–84 (quoting 140 S. Ct. 2183, 2192 (2020)). The Court also addressed amicus's "attempts to distinguish the FHFA from the CFPB" in an effort to show that Seila Law was not controlling in Collins.[4] Id. at 1784. In one of its attempts, amicus argued "that Congress may restrict the removal of the FHFA Director because when [FHFA] steps into the shoes of a regulated entity as its conservator or receiver, it takes on the status of a private party and thus does not wield executive power." Id. at 1785. In other words, amicus asserted that CFPB is different from FHFA as conservator or receiver, and that Seila Law

---

[4] Amicus made four arguments in their attempt to distinguish Seila Law and the CFBP from Collins and the FHFA. See Collins v. Yellen, 171 S. Ct. 1761, 1784–1787 (2021). However, Yargeau latches onto only one of these arguments in her efforts to defeat Montilla. This Court discusses only that argument here.

7

was not controlling, because when FHFA acts as conservator or receiver it forgoes executive power by "stepping into the shoes" of Fannie Mae or Freddie Mac. The Collins Court was unpersuaded. First, FHFA "does not always act" in its capacity as conservator or receiver, "but even when it acts as conservator or receiver" its "authority stems from" HERA. Id. This requires FHFA to "interpret" HERA, and interpreting law "'is the very essence of "execution" of the law.'" Id. (quoting Bowsher v. Synar, 478 U.S. 714, 733 (1986)). "Moreover," FHFA is authorized by HERA to exercise powers that "differ critically from those of most conservators or receivers," such as acting for its own or the public's best interest, being protected from judicial review, and having authority to issue subpoenas. Id. at 1785–86 (citations to HERA omitted). These statutory grants generally demonstrate that FHFA, like the CFPB, "clearly exercises executive power." Id. at 1786. Lastly, in a footnote, the Court rejected amicus's reliance on O'Melveny & Myers v. Federal Deposit Insurance Corporation, finding that O'Melveny was "far afield" from the circumstances of Collins. Id. at 1786 n.20 (citing 512 U.S. 79 (1994)). In O'Melveny, the Court held "that state law, not federal common law, governed an attribute of the [Federal Deposit Insurance Corporation's ('FDIC')] status as receiver for an insolvent savings bank." Id. (citing 512 U.S. at 81–82). The Collins Court found that the "nature of FDIC's authority in that capacity sheds no light on the nature of the FHFA's distinctive authority as conservator" under HERA. Id. at 1786 n.20. Therefore, O'Melveny offered no guidance as to whether FHFA exercises executive power generally as conservator under HERA.

Despite these differences between Collins and Montilla, Yargeau contends that Collins "specifically rejected multiple foundational assertions, analysis and conclusions of law set forth" in Montilla. [Dkt. No. 46 at 1]. In other words, Yargeau contends that Collins essentially overruled Montilla. This contention is based largely on three arguments, none of which are persuasive.

8

1. **Yargeau's First Argument: FHFA's "Unique" Conservatorship Renders FHFA a Government Entity During Nonjudicial Foreclosures**

Yargeau claims that the Supreme Court "clarified" in Collins that "the conservatorship of FHFA over Fannie Mae is a unique arrangement that goes beyond the parameters of a typical common law conservatorship" because FHFA "may act for the benefit of itself and by extension the general public of the United State and hence the government." [Id. at 2]. As discussed, the Collins Court indeed noted that FHFA conservatorship under HERA "differs from a typical conservatorship" because HERA authorizes FHFA to act not only in the best interest of Fannie Mae, but also "by extension, the public it serves." 141 S. Ct. at 1776. But Yargeau's conclusion that this means FHFA also acts for the "benefit of . . . the government" is unsupported, and the implication from such conclusion is undeveloped.

The Collins Court observed that FHFA's conservatorship is unique in two contexts. First, while analyzing the shareholders' statutory claim that the amended agreement was outside FHFA's authority as conservator under HERA. See id. at 1776–77. The Court concluded that because of FHFA's unique conservatorship, its decision to execute the amended stock purchase agreement was properly within its authority under HERA, so the shareholders' statutory claim was barred by HERA's anti-injunction clause. Id. The Court's "clarification" of FHFA's unique conservatorship in that context has nothing to do with whether FHFA is a government entity when nonjudicially foreclosing. Second, the Court mentioned FHFA's unique conservatorship during its constitutional analysis as one of FHFA's various powers under HERA—a single example in a string of others intended to show that "FHFA clearly exercises executive power" generally, and hence is bound by separation of powers principles. See id. at 1785–86. In sum, the Court's discussion in Collins of the unique nature of FHFA's conservatorship has no connection to FHFA's status in the context of nonjudicial foreclosures.

9

Compounding this apparent lack of relevance of the Court's statements on the unique nature of FHFA conservatorship, Yargeau fails to articulate how this "clarification" yields her desired conclusion. She fails to show that if FHFA as conservator under HERA can act for its own benefit, and therefore the public's benefit, then ipso facto FHFA also acts for the government's benefit. That is to say, Yargeau fails to develop how such syllogism would qualify FHFA a government entity during nonjudicial foreclosures—her premise does not warrant the conclusion.

### 2. Yargeau's Second Argument: Collins Rejected O'Melveny's "Stepping into the Shoes" Doctrine

Yargeau claims that the Collins Court "refused to apply the 'stepping into the shoes'" doctrine established in O'Melveny to FHFA, which "presents a solid and clear rejection" of the First Circuit's "application" of that doctrine in Montilla. [Dkt. No. 46 at 3, 10]. Part of this argument is based on Yargeau's reading of Montilla as "propound[ing] that *any* action FHFA takes as a conservator is automatically not a government action simply because the irrelevant O'Melveny opinion states that a receiver, not a conservator, 'steps into the shoes' of its' private ward." [Id. at 9 (emphasis in original)]. Yargeau further contends that the Court in Collins "stressed that 'the roles of conservator and receiver are very different,'" which further distinguishes O'Melveny from Montilla. [Id. at 10]. None of these contentions are availing.

As mentioned, the Supreme Court in O'Melveny examined whether the rights and knowledge of a failed bank should be imputed to FDIC in its role as the failed bank's receiver. 512 U.S. at 85–86. Based on statutory language governing FDIC, the Court held that such rights and knowledge are imputed because "FDIC as receiver 'steps into the shoes' of the failed" bank. Id. at 86. In Collins, on the other hand, amicus relied on O'Melveny for a much broader purpose: to suggest that "Congress may restrict the removal of the FHFA Director because when [FHFA] steps into the shoes of a regulated entity as its conservator or receiver, it takes on the status of a

10

private party and thus does not wield executive power." 141 S. Ct. at 1785. The Collins Court rejected this broader contention, noting various circumstances under HERA when "FHFA clearly exercises executive power." Id. at 1786. In so doing, the Court distinguished O'Melveny in a footnote as "far afield," because the "nature of the FDIC's authority" as receiver "sheds no light on the nature of the FHFA's distinctive authority as conservator under [HERA]." Id. at 1786 n.20. The Collins Court was evaluating whether FHFA can ever exercise executive authority under HERA because any statutory grant of executive power impacted whether FHFA's single Director structure violated the separation of powers. O'Melveny's more precise holding, therefore, could not "shed[] light" on FHFA's general executive powers.

Indeed, Yargeau's contentions ignore the distinction between general executive powers and context specific conservatorship or receivership—but it is precisely this distinction that illustrates why Collins did not disturb Montilla. Like O'Melveny, and contrary to Yargeau's assertion that the First Circuit broadly "propounded" that "*any* action FHFA takes as a conservator is automatically not a government action," Montilla is context specific: "after stepping into [Fannie Mae's] shoes under HERA and exercising [its] private contractual rights to nonjudicially foreclose on appellants' properties, FHFA did not act as the government."[5] Montilla, 999 F.3d at 757. This context specific approach is reinforced by Justice Sotomayor's separate opinion in Collins:

> [O]ne of the FHFA's main powers is assuming the mantle of conservatorship or receivership over [Fannie Mae], which hardly registers as executive at all. When acting as a conservator or receiver, an agency like the FHFA steps into the shoes of

---

[5] The First Circuit's conclusion that FHFA inherits Fannie Mae's contractual rights further supports dismissal here. Yargeau does not clearly allege whether the mortgage agreement she signed allows nonjudicial foreclosures. However, the Court infers that this is so from the circumstances of this case: Yargeau does not assert that FHFA and Fannie Mae breached her contractual rights and does not claim breach of contract. Yargeau likely willingly entered into a contract that permits nonjudicial foreclosure, which rights were transferred to Fannie Mae and FHFA. Yargeau cannot now avoid these contractual provisions by relying on the Fifth Amendment. FHFA and Fannie Mae stress this in their reply: "Plaintiff cannot show that 'FHFA relied on any power other than [Fannie Mae's] contractual rights in carrying out the nonjudicial foreclosures.' FHFA's exercise of Fannie Mae's pre-existing powers does not become government action merely because those powers now rest with the Conservator." [Dkt. No. 51 at 5 (edits in original) (quoting Montilla, 999 F.3d at 757)].

> the party under distress, and largely sheds its government character. Even granting that there are differences between the FHFA's powers as a conservator and those of a common-law conservator, the FHFA's conservatorship function is a role one would be hard-pressed to characterize as near the heart of executive power.

141 S. Ct. at 1806 (Sotomayor, J., concurring-in-part and dissenting-in-part) (original edits omitted) (quotations omitted). In this sense, Montilla and O'Melveny are alike, and together are "far afield" from Collins, because the capacities at issue in Montilla and O'Melveny relate to specific powers inherited by an agency from a private party. [See Dkt. No. 51 at 7]. Contrary to Yargeau's contentions, Collins did not present a "solid and clear rejection" of the First Circuit's application of O'Melveny's "stepping into the shoes" analysis in Montilla.

Yargeau also attempts to distinguish between O'Melveny and Montilla by asserting that Collins held that the "roles of conservator and receiver are very different" because there are "major differences between purposes and functions of a conservator as opposed to a receiver[.]" [Dkt. No. 46 at 10]." This argument is misleading. In Collins, the Court observed as part of its statutory analysis of HERA that "when the FHFA acts as a conservator, its mission is rehabilitation," whereas "by contrast, when FHFA acts as a receiver, it is required to 'place the regulated entity in liquidation and proceed to realize upon the assets of the liquidated entity.'" Collins, 141 S. Ct. at 1776 and n.12 (quoting §§ 4617(b)(2)(D) and (b)(2)(E); 4617(a)(4)(D)). Contrary to Yargeau's reading, Collins was not generally remarking on the differences between conservatorship and receivership, and certainly made no distinction that would somehow render the logic of O'Melveny inapplicable to Montilla.

Furthermore, Yargeau's fixation on the fact that O'Melveny involved FDIC as receiver while Montilla involved FHFA as conservator is faulty. In Montilla, the First Circuit focused on statutory language—noting the similarities between the statute at issue in O'Melveny and HERA's provisions. See Montilla, 999 F.3d. at 757 (comparing § 4617(b)(2)(A) with 12 U.S.C.

§ 1821(d)(2)(A)). The First Circuit concluded, based on those statutory similarities, that O'Melveny's "textual logic" could guide the First Circuit in its evaluation of FHFA's role as conservator stepping into the shoes of Fannie Mae during nonjudicial foreclosures. Id.

For all these reasons, there is no indication that the Court in Collins rejected O'Melveny as applied in Montilla.

### 3. Yargeau's Third Argument: Collins Indicated that FHFA's Conservatorship Over Fannie Mae is Permanent

Yargeau claims that the Court's "analysis and conclusions of law in Collins . . . indicate that [FHFA's] conservatorship is not a 'temporary' arrangement," and that the "indefinite nature of the conservatorship renders" it permanent. [Dkt. No. 46 at 2–3; 11–13]. Yargeau does not include helpful citations to Collins to support this claim. [Id.]. Instead, she relies on a legal definition of "temporary," and notes that Fannie Mae does not seem to be heading towards financial independence. [Id. at 11–12].

Yargeau's claim is unsubstantiated. The Collins Court never discussed the "indefinite nature" of FHFA's conservatorship, let alone indicate that Fannie Mae is under the permanent conservatorship of FHFA. Indeed, Collins does not include a single citation to Lebron, even though Lebron's three-part test determines "when a private corporation is a government actor for purposes of certain constitutional claims against it." Montilla, 999 F.3d at 759 (citing 513 U.S. at 376, 399). And Lebron's test does not include reference to dictionary definitions or financial considerations of the agency in question. In short, without clear language in Collins indicating that Montilla was wrong to rely on Lebron in holding that FHFA's conservatorship is temporary, this Court will not stray from binding precedent. See Fitch v. Fed. Hous. Fin. Agency, No. 18-214-JJM, 2022 WL 684083, at *16 (D.R.I. Mar. 8, 2022) (concluding that Collins "does not overrule Montilla," and therefore "Montilla stands as the controlling precedent that this Court must

13

follow." (citing Kisor v. Wilkie, 139 S. Ct. 2400, 2422 (2019)) (Report & Recommendation adopted in full, Fitch v. Fed. Hous. Fin. Agency, No. 18-214-JJM-PAS, 2022 WL 980743 (D.R.I. Mar. 31, 2022)).

Lastly, in rejecting Yargeau's construction of Collins, this Court notes that Montilla is only the most recent Circuit Court decision in a line of cases determining that in this context—when Fannie Mae, and FHFA as conservator of Fannie Mae, conduct a nonjudicial foreclosure—neither entity is a government actor. See, e.g., Herron, 861 F.3d at 169 ("the government's indefinite but temporary control does not transform Fannie Mae into a government actor" and HERA "evinces Congress's intention to have the FHFA step into Fannie Mae's private shoes."); Rubin v. Fed. Nat'l Morg. Ass'n, 587 F. App'x 273, 275 (6th Cir. 2014) ("Plaintiff first argues that the foreclosure violated the Due Process Clause of the Fifth Amendment . . . we hold that Fannie Mae is not a state actor. Accordingly, the foreclosure did not violate the Fifth Amendment."); Seals v. Carrington Mortg. Servs., LLC, 475 F. Supp. 3d 517, 520–21 (N.D.W. Va. 2020) ("the Complaint challenges the constitutionality of a non-judicial foreclosure sale . . . this claim fails as a matter of law because Fannie Mae is not a government actor."); Wright v. Fed. Nat'l Morg. Ass'n, No. 1:13-cv-04294-SCJ, 2014 WL 12042555, at *2–3 (N.D. Ga. Sept. 22, 2014) ("Plaintiff asserts that Defendant Fannie Mae is a government actor . . . subject to the Due Process [Clause] . . . The Court . . . concludes that Plaintiff's claims are insufficient to state the necessary government action."); Dias v. Fed. Nat'l Morg. Ass'n, 990 F. Supp. 2d 1042, 1060, 1062 (D. Haw. 2013) (plaintiff alleged "that Fannie Mae is a government actor and that the non-judicial foreclosure of the property violated the Due Process Clause. . . . The Court agrees with those courts in this Circuit and others that have considered and rejected Plaintiff's argument that Fannie Mae is a government actor by virtue of the FHFA conservatorship."); Fed. Nat'l Morg. Ass'n v. Mandry,

No. 12-13236, 2013 WL 687056, at *1, 4–5 (E.D. Mich. Feb. 26, 2013) (plaintiffs sued "in response to Fannie Mae's action . . . seeking to recover possession" of a property, and the court held that plaintiffs' "Fifth Amendment claims asserted against FHFA and Fannie Mae are DISMISSED because Fannie Mae and FHFA are not government actors that can be held liable for constitutional violations."). I agree with Defendants' argument that had the Court intended Collins to reverse this line of cases, it would have done so expressly. [See Dkt. No. 51 at 7–8]. To borrow from Collins itself, this Court will not "draw[] an unwarranted inference" from the Supreme Court's "silence on this matter." 141 S. Ct. at 1783. I also note that on March 21, 2022—nearly a year after Collins—the Court denied certiorari in Montilla, leaving the First Circuit's holding undisturbed. See Montilla v. Fannie Mae, 142 S. Ct. 1360 (2022).

In sum, the First Circuit held in Montilla that FHFA and Fannie Mae are not government actors in the context of nonjudicial foreclosures, and the Supreme Court did not overrule this holding in Collins. FHFA and Fannie Mae are not subject to Fifth Amendment due process constraints, and Yargeau's claims should be dismissed.

### B.    Wells Fargo

Yargeau bases her claims against Wells Fargo on a supposed agency relationship Wells Fargo has with FHFA and Fannie Mae. [Dkt. No. 22 ¶¶ 1, 37–40]. Wells Fargo, citing Lebron, argues that the Supreme Court "does not recognize an 'agency-based' approach for establishing that a party is a government actor for purposes of a Fifth Amendment claim," so a "bare allegation of an 'agency' relationship is simply not sufficient to establish" liability. [Dkt. No. 27 at 8–9 (citing 513 U.S. at 339)]. Yargeau offers nothing to rebut this argument, and the Court agrees with Wells Fargo. But even assuming arguendo that Wells Fargo is an agent of FHFA and Fannie Mae, this would not necessarily establish that Wells Fargo is a government actor because, as discussed,

FHFA and Fannie Mae, the alleged principals, are not government entities when performing nonjudicial foreclosures. Yargeau, therefore, has not presented an "actionable legal theory" against Wells Fargo, and her claims should be dismissed. See Gagliardi, 513 F.3d at 305.

Wells Fargo also moves to dismiss Count II of Yargeau's complaint, which alleges damages based on "Quiet Title."[6] [Dkt. No. 22 ¶¶ 101–06]. However, Count II essentially reasserts Yargeau's primary grievance that Defendants "jointly violated her Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale[.]" [Id. ¶ 103]. It therefore fails for the reasons already discussed. However, even if Yargeau had alleged a distinct quiet title claim, it would fail because "under Massachusetts law, a quiet title action cannot be maintained unless both actual possession and the legal title are united in the plaintiff[.]" Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017) (quotation omitted). Per Yargeau's own allegations, she possesses neither legal title to, nor actual possession of, the property in question, so she "lacks standing" to "bring a quiet title action[.]" Id.

## III. CONCLUSION

I RECOMMEND that Defendants' motions to dismiss be GRANTED WITH PREJUDICE.[7]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[6] FHFA and Fannie Mae maintain that Yargeau's quiet title claim is "against Wells Fargo" and "not directed" at them, so they do not address Count II in their motion. [Dkt. No. 29 at 3 n.1]. Yargeau does not discuss her quiet title claim in her opposition.

[7] The Parties are advised that pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), they are entitled to object to the Court's Report and Recommendation by filing a specific written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. Such written objections must specifically identify the portion of the Report and Recommendation to which objection is made and the basis for those objections. The Parties are further advised that the First Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. See, e.g., M. v. Falmouth Sch. Dep't, 847 F.3d 19, 26 (1st Cir. 2017); Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988).